CASE 21.—SUIT BY THE FIDELITY TRUST CO. AS EXECU-
TOR OF THOS. WALSH, DECEASED, AND OTHERS,
TO SETTLE THE ESTATE IN WHICH E. V. AND
MOSES MANDEL FILED EXCEPTIONS ·TO THE
REPORT OF SALE.—February 25.

# Mandel. &c. v. Fidelity Trust Co.

Appeal. from Jefferson Circuit Court; (Chancery
Branch, First Division).

SHACKELFORD MILLER, Judge.

Judgment for plaintiffs, defendants appeal—Af-
firmed.

1. Trusts — Trust Deeds — Rights of . Beneficiaries — Power of
Beneficiary to Dispose of .Porperty.—A husband conveyed
land to a trustee in trust for the sole and separate use of
his wife for life, and, after her death, ·to her children, with
a provision that she might during his life dispose of the
property as she might see fit, and execute binding convey-
ances. Held, that the wife during the lifetime of the husband
had the absolute right to convey, and a conveyance by her
in which the husband joined was valid, though such con-
veyance was made to a grantee who on the same day re-
conveyed the premises in fee simple to the wife.
2. Powers — "General Power of Appointment" — Execution by
Donee in Favor of Himself.—A general power of appointment
may be exercised in favor of whomsoever the donee pleases,
·even in favor of the donee himself.
3. Corporations—Representation by Officers—Conduct of Litiga-
tion.—The by-laws of a corporation made its vice president
·one of the chief officers thereof, equal in power with its presi-
dent, and provided that the management of all trusts should
be divided among its three chief officers, the chairman of
the board, the president, and vice president, and that each
of the officers should be primarily responsible for the man-
·agement of the trusts assigned to him. The corporation

Mandel, &c. ·v. Fidelity Trust Co.

became executor of decedent, and the settlement of the estate was assigned to the vice president, who made an affidavit for a warning order in a suit by the corporation to settle the estate. Held, that the affidavit was sufficient, within Civ. Code Prac. section 58, providing that a warning order shall not be made until plaintiff or his agent or attorney has made the necessary affidavit, etc.

4. Executors and Administrators—Sale of Real Estate—Defective Title—Lien of State for Taxes—Effect.—Where the proceeds of real estate sold by an executor are in court, or will be paid into court, and are subject to the order of the court, the title of the real estate is not defective, though the State has a lien thereon to secure it in the amount of an inheritance tax due to it, since the proceeds may be subjected to the payment of such tax.

SELLIGMAN & SELLIGMAN and J. M. CHILTON for appellants.

## POINTS AND AUTHORITIES.

1. Right of a life tenant with power of sale to enlarge the life estate into a fee simple estate. (4 Kent, 535, 536.)

2. Right of one not a chief officer of a corporation to make an affidavit in support of a warning order. (Subsec. 33, of sec. 732 of the Civil Code; subsec. 3, of sec. 51 of the Civil Code; subsec. 2, of sec. 117 of the Civil Code; Ky. Jeans Clothing Co. v. Bohn, 20 Ky. Law Rep. 612.)

3. Does the inheritance tax constitute a lien upon real estate? (Article 19, of the 1906 Acts of the Ky. Legislature; American and English Encyc. of Law, vol. 27, p. 354.)

4. Jurisdiction of the court.

WALLACE & MILLER for appellee.

## POINTS AND AUTHORITIES.

1. Inheritance tax is not a tax on the property and is therefore a lien on the real estate sold in this action. (McGown v. Illinois Trust Co., 170 U. S., 283; Knowlton v. Moore, 178 U. S., 41; Plummer v. Coler, 178 U. S., 115; Eyre v. Jacob, 14 Gratt 422, 73 Am. Dec., 377; State v. Switzler, (Mo) 40 L. R. A., 280; Kochersperger v. Drake, 167 Ill. 122, 51 L. R. A., 466; State v Alston, 94 Tenn., 674, 28 L. R. A., 179; Wallace v. Meyers, 387 Fed. 184, 4 L. R. A., 171; State v. Tunnell, 39 L. R. A., 170.)

(a) The plaintiff literally complied with section 58 of the Code when its vice president swore to the affidavit for the warn ing order. While an agent of the plaintiff is required to state that plaintiff is absent from the county, a chief officer of a corporation is not such an agent, and is not and could not be required to state that the corporation is absent from the county.

(b) Section 117 of the Code does not apply. Section 58 being under another heading contains all the law on this particular subject. (Broadus v. Broadus, 10 Bush, 308.)

(c) It is too late after final judgment to raise this question. The jurisdiction of the court depends not on the affidavit which procured the warning order but on the fact that the warning order is property issued. (Hynes v. Oldham, T. B. Mon., 266; Benningfield v. Reed, 8 B. Mon., 102; Newcomb v. Newcomb, 13 Bush, 562; Sears v. Sears, 95 Ky., 174; Carr v. Carr, 92 Ky., 522; Brownfield v. Dyer, 7 Bush, 505.)

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

In a suit brought by the Fidelity Trust Company in the Jefferson circuit court to settle the estate of Thomas Walsh, deceased, E. V. and Moses Mandel became the purchasers of certain real estate. They filed exceptions to the report of sale upon three grounds: First, that there was a defect of title in the decedent; second, that the affidavit for a warning order was not made by the chief officer of the trust company; and, third, that under the act of 1906 the State had a lien upon the real estate of decedent to secure it in the amount of the inheritance tax due to the Commonwealth. The defect in the title complained of grows out of the following state of facts: On the 5th of September, 1859, William P. Calvert conveyed the property in question to Richard S. Herr, in trust for the sole and separate use of his wife, Mary Elizabeth Calvert, during her lifetime, and, after her death, to her children, with this proviso:

"That if at any time during my life, my said wife wishes to sell or dispose of said property in any way, she can do so, and her deed to the same shall be good and binding on all persons claiming the same, hereby investing her with full power to dispose of said property hereinafter set out, as she may wish, and to dispose of the proceeds of the same as she may wish, provided she dispose of said property during my life, and all this she may do without the consent or approbation of the said trustee or any trustee she may have." On the 21st of February, 1881, and before the death of William P. Calvert, Mary Elizabeth Calvert and her husband, William P. Calvert, in the exercise of the power conferred upon her in the deed from her husband to her trustee, conveyed the same property to Henrietta Goodall, and on the same day Henrietta Goodall conveyed said property in fee simple to Mary Elizabeth Calvert. Mary Elizabeth Calvert, after the death of her husband, sold and conveyed this property to Henry Loemker, on February 25, 1886. Henry Loemker afterwards sold and conveyed it to Thomas Walsh, who owned it at the time of his death. It is insisted for appellants that the conveyance by Mary Elizabeth Calvert and her husband, William P. Calvert, to Henrietta Goodall, was done for the purpose of avoiding the force and effect of the trust, and in order to invest Mary Elizabeth Calvert with the fee to said property, and that, therefore, these acts had the effect of divesting the children of William P. Calvert of their interest in said property as remaindermen, and that, inasmuch as Mary Elizabeth Calvert did not sell the property until after the death of her husband, she passed, at most, by her deed to Henry Loemker, but a life estate. For appellee it is insisted that the only restriction or

limitation placed upon Mary Elizabeth Calvert in the deed is that she shall exercise the power given her thereunder during the life of her husband, and that, having done this, the reasons which actuated her cannot be inquired into, but that by the conveyance she vested the fee-simple title to the property in the purchaser.

Undoubtedly, when this property was conveyed by William P. Calvert in trust for the benefit of his wife, with the proviso that she might sell or dispose of it as she saw fit at any time during his life, he was intending to provide for his wife a home which she could not dispose of after his death, yet at the same time he was enabling her to dispose of it, should she desire to do so, at any time during his life. He recognized that she could not dispose of it without he joined with her in the deed, and that he would thus be given an opportunity to protect her and keep her from being imposed upon in its sale. The language used in the power given her is broad. She is authorized, not only to sell or dispose of the property, but she is further authorized to do so in any way that she wished, and, likewise, is she given full power and authority to dispose of the proceeds realized from its sale as she wished. Under this power she had the absolute right to sell the property as she did, and her reasons for so doing are not open to inquiry, since she was acting clearly within the power given her in the deed of trust. Granting that the contention of appellants is correct, that this deed which she and her husband made to Henrietta Goodall was made for the sole purpose of defeating the trust and investing her with the fee-simple title to the property in question, still it cannot be said that by so doing she was perpetrating a fraud upon the remaindermen, because

any act done by her in the exercise of the power would have destroyed the right of the remaindermen. If she had sold the property to any one else for a valuable consideration, the right of the remaindermen would have been destroyed just as completely as it was by her conveyance to Henrietta Goodall, and having it again conveyed to her subject to no limitation. The remaindermen had no interest whatever in the property unless she failed to exercise the power. The deed which created the trust imposed upon Mary Elizabeth Calvert no duty to exercise the power for the benefit of the remaindermen, but, on the contrary, she was expressly given the right to exercise the power for her own benefit, and whether she did so by selling the property and taking the money herself, or by conveying it to another, and having it reconveyed to her in fee, is wholly immaterial so far as the rights of the remaindermen are concerned.

In passing upon the question of the right of one to exercise a power for his own benefit, this court, in the case of Coats' Ex'r v. L. & N. R. R. Company, 92 Ky. 263, 13 Ky. Law Rep. 557, 17 S. W. 564, said: "It is said by the appellant's counsel that the power of disposition by Beulah Coats, the widow, was discretionary, and in transferring or conveying the estate intrusted to her she could not lawfully delegate the exercise of this discretion to Hopkins. There was, in one sense, a trust by reason of this provision of the will, for so long as she held the property undisposed of it was for the benefit of those in remainder at her death, but, when selling the corpus of the estate, she was executing the power for her own benefit. If she had plenary power to sell and transfer this estate or any part of it not for those in remainder, but for her own benefit, and did so either in person

or delegated that power to an agent when he might deem it necessary to sell, we cannot perceive in what manner any trust or confidence reposed in her by the testator has been abused. The sale of the property affected those in remainder by depriving them of any interest in it, and the right to do so was expressly given by the will. The power to sell an estate for the benefit of another or those in remainder would be in the nature of a trust, but the unlimited power to sell for one's own benefit, and that power to be unrestrained, cannot well create a trust as to any one else, and with such plenary power the widow had the same right to delegate this power to another to sell for her when he saw proper that she would have had in giving the power if there had been no remainder. The power to sell in this case was absolute, and to sell for herself and not for any one else. The time of selling, the place of selling, and the mode of selling could be determined by an agent authorized to sell at a time and place and upon such terms as he saw proper, for the reason that this estate was, by the provisions of her husband's will, at her absolute disposal to sell, convey, transfer, or expend as she may deem proper during her lifetime, without restraint, etc. The purpose of the husband was to give to the wife the same power that he could have exercised with reference to this estate during his life, with the exception of the right to devise it." As in the above case the power was given for the benefit of the widow, so in the case at bar the power was given for the benefit of Mrs. Calvert alone, and not for the benefit of the remaindermen, and, inasmuch as any exercise of the power by her defeated the prospective rights of the remaindermen, they · are in no condition to complain of the manner in which she chose to exercise

that right, or the purpose or motive which she had in its exercise. If she could sell it and dispose of the proceeds of the sale as she saw fit, so she could sell it in such a way as to secure the absolute title to the property in herself, as she did. "A general power of appointment may be exercised in favor of whomsoever the donee pleases, even in favor of the donee himself." 22 Am. & Eng. Encyc. of Law (2d Ed.) p. 1133. By the exercise of the power given her in the trust deed, we are of opinion that Mrs. Mary Elizabeth Calvert, when she and her husband conveyed the property in question to Henrietta Goodall, invested her with the fee-simple title thereto, and, when Henrietta Goodall reconveyed the property to Mary Elizabeth Calvert, she took the fee simple title to same, and consequently ,by her deed to Henry Loemker, passed to him a perfect title.

We come next to a consideration of the second ground of exception, to-wit, that the affidavit for the warning order was not signed by the chief officer of the company. Section 58 of the Code, which regulates the practice, so far as the appointment of warning attorneys is concerned, provides that the clerk shall not make the warning order until the plaintiff, or, if he be absent from the county, his agent or attorney, has made the necessary affidavit, and, if the affidavit is made by the agent or attorney, it must show the affiant's connection with the plaintiff and his absence from the county. In the case at bar the plaintiff is a corporation. It can only speak through its officers. Had the affidavit been made by the president of the company, it could not be said that it was made by the plaintiff, nor could it be said that it was made by the agent or attorney of the company, for the president is no more the agent of the company

than is the vice president or any other officer thereof. By section 6 of the by-laws of the Fidelity Trust Company the vice president is made one of the chief officers of the company, who, while second in name, is in fact equal in power and authority with the president of the company, and together with the chairman of the board, who is also one of the chief officers, these two conduct the trust affairs of the corporation, and section 5 of the by-laws provides that the management of all trusts shall be divided among the three chief officers, the chairman of the board, the president, and vice president, and that each of said officers shall be primarily responsible for the management of the trusts assigned to him. The record in this case shows that the settlement of the estate in question was in accordance with the express provisions of the by-laws assigned to the vice president, and therefore he was the only officer of the company who was familiar with the affairs of the trust estate of which he was seeking a settlement, and was the only one qualified to make the affidavit in question, and was, in fact, the chief officer of the company so far as the settlement of this estate was concerned. We are of opinion that the affidavit made by him conformed fully to the requirements of section 58 of the Civil Code of Practice.

On the question as to whether or not the State has a lien upon this property to secure it in the amount of the inheritance tax due from the estate of Thomas Walsh, deceased, we deem it necessary but to say that the proceeds arising from this sale either are now in court, or will be paid into court, and will in any event be subject to the order of the court. The lien of the State is against the property of the decedent, and will first be satisfied out of any personal estate left by him, and, if this sum is not sufficient, then the realty

or enough thereof will be subjected to the payment of this claim of the State, and the trial court with the entire estate under its control and direction can make such order as is necessary to satisfy any claim of the State against the estate of decedent for taxes, inheritance or otherwise. This being true, the third objection is without merit.

We are of opinion that upon the whole case the record shows that the decedent was the owner of the fee-simple title to the property in question, that the proceedings seeking a sale of this property were regular and in form, and that the trial court did not err in overruling the exceptions filed to the report of sale.

The judgment is affirmed.